Appeal Number 19-2113. And for the appellant, Ms. Penebed. Good morning, and may it please the Court. I'm Amy Penebed. I'm here on behalf of the Federal Defender Program on behalf of Appellant Ismael Rangel-Rodriguez. Now, the legal question presented in this case is the same as the one articulated by my colleague earlier this morning in Hernandez-Perdomo. It's whether a defendant who is ordered removed in absentia through no fault of his own and was never adequately informed of his right to administrative or judicial review is entitled to collaterally attack the underlying removal order. Now, there are factual distinctions between the cases, but the legal analysis is the same. In both cases, there's a defective notice to appear, an in absentia removal hearing that was done through no fault of the individual, and removal without adequate notice of the judicial and administrative rights. And this combination of procedural defects we submit establishes that Mr. Rangel-Rodriguez can collaterally attack his 2012 removal order. Now, I won't repeat everything that my colleague said, but I do think that it is important to understand the context of 1326D. And 1326D, like the Mendoza-Lopez decision that it codifies, is concerned with failures of due process in immigration proceedings, in administrative proceedings, that would make it fundamentally unfair to rely on that removal order in a subsequent criminal proceeding. There must be some judicial check. And so the question is whether there was procedural defect that insulated that removal order from judicial review, and if that is the case, then due process requires that a collateral attack be allowed. So, as my colleague mentioned, there's three prongs to 1326D. And again, as in the Hernandez-Perdomo case, the question of judicial review and administrative exhaustion are intertwined because the failure came at that very first step, where there was no notice to Mr. Rangel that he had the opportunity to appeal to the adverse decision in the removal order to the Board of Immigration Appeals. And in Mendoza-Lopez, the court held that an immigration judge's failure to adequately inform an individual of their right to appeal effectively deprived that individual of judicial review. And that has been affirmed in many circuit court cases, including the Fourth Circuit in Moreno-Tapia, the Ninth Circuit in Gonzalez-Villalobos. And in Mr. Rangel's case, again, there was an in absentia removal. So Mr. Rangel was not present at the hearing. There was not that recitation that we've seen in a lot of the case law by the immigration judge at the conclusion of the hearing that the individual had 30 days to appeal an adverse decision. So we never had that oral recitation. The government is relying on notice through at least two documents. And one of the documents is the same as the one that was explained in the Hernandez-Perdomo case, which was that notice to appear. And we believe that that notice to appear, like in the Charleswell decision, was misleading. And the Charleswell decision, as my colleague said, combined both an omission of one's rights with a misleading statement. He's correct that there was nothing technically wrong with the statement in the notice of intent in Charleswell, but that a reading of it misled an individual. What about the government's argument that, and I assume they'll make the same one with respect to your client, that we just heard that there hasn't been anything submitted in the record that this was actually misleading to your client? And nor was there anything in the Charleswell decision that there was something actively misleading. The question is, on the face of the document, is it actively misleading? So it doesn't matter whether it actually misled your client. It's just look at the face and is it misleading there? That's what the Charleswell court did and I think is appropriate here as well, Your omission in the section that deals with failure to appear at that hearing. Because the statute does grant affirmative rights there. So 1229A-5 says, I'm sorry, this is not 1229A-5, it's B-5C-2, specifically says if you were not present through no fault of your own, there are remedies. Now, for unknown reasons, the NTA leaves out that affirmative statement of rights. And that omission combined with the language included in the content of the hearing section, we submit as misleading. And that's because in that paragraph, it says at the conclusion of your hearing. And the at the conclusion of your hearing has both a temporal and a spatial connotation to it. Everything in that paragraph talks about what is permissible at the hearing, what you may produce at the hearing. And so for an individual who was not present at the hearing, without knowing that they have the opportunity to reopen, because the NTA doesn't say that, when they read that paragraph talking about the conduct of the hearing, which says at the conclusion of the hearing you may do this, a reasonable reading of that is you've missed your chance. And so we submit that the combination of those factors led to misleading notice, which as my colleague pointed out, is worse than affirmative omission of notice. And I point out the government relies in the alternative on this idea that you're not required to inform an individual of their rights. And I think that that's an overly broad reading of the case law. So in a read of Campos, the individual did have notice that there was a remedy available. So the individual was served with an order to show cause that explicitly included a recitation of you have the right to reopen. And so this court has never held that when there is absolutely no notice as to rights, that somebody is responsible for knowing their procedural rights. And in fact, the language that both the district court and the government cite in Dominski, I think is an overly broad reading. So Dominski is that very inviting language about how in the immigration context, like the criminal context, you're not supposed to know your, you're supposed to know your own rights. And it's certainly true that ignorance of the law is not a defense to a charge. But in the criminal context, we don't presume that you know of your right to appeal. There's federal rule of criminal procedure 32, which says at a sentencing hearing, the judge must inform you of your right to appeal. And when the judge fails to do so, and there's not other evidence in the record that the individual knew of their appellate rights, this court has held that that's reversible error. And I'm thinking specifically, Your Honor, of the Trest decision, that's 87 F 3rd 188, and U.S. XRL Singleton v. Woods, that's 440 F 2nd 835. So even though there's that inviting language, we don't hold you responsible for knowing your appellate rights in the criminal context, nor should we in the immigration context, nor has this court ever done so. In each of those cases where there was some failure to file a notice of reopen, there was always either counsel or notice. The government also cited Alegría Saldana, and in that case, the individual was represented at their immigration proceeding, and they had counsel there, and they were informed of their right to appeal. And it's certain that the lawyer did not file an appeal, and Arita Campos suggested that it was error there. What the court said was, even though I think what the distinction is, essentially, is that you are, once you have notice, if you don't know how to effectuate your appeal rights, that's on you. But the court has never said, if we never tell you or if we mislead you about your appeal rights, that you're responsible for figuring that out on your own. I think that's just not the state of the law. Should I reserve the rest of your time? I would. Thank you, Your Honor. Thank you, Ms. Penobot. We'll now hear again from Ms. Wells. Good afternoon now. Melody Wells appearing again on behalf of the United States. I think I'd like to start first with the question about notice and absentia proceedings. What happened in this case is that the defendant, after obtaining bond, he was taken into immigration custody after reentering the country, and he appeared at, I think, three different immigration proceedings via videoconference. Ultimately, he obtained bond, he secured a cosigner for that bond, and was released. After he was released, he was arrested for driving under the influence, and he was unable to attend the removal proceedings because he was in custody at the time. And so no one disagrees here that he did not receive notice, and no one disagrees that the reason that that happened was because he was in custody. I think the point of disagreement about the right to receive notice of this remedy, one of the problems there is that it's very difficult to give notice to someone who has not appeared at their in absentia removal proceeding that they have any further rights because they were not there. What has happened instead is that Congress has created a very practical remedy for that, which is the right to move to reopen your removal proceedings at any time. This, in fact, solves that problem that necessary flows from the person's lack of appearance in the removal proceedings. It's a do-over. It's a chance to go back and say, I was in custody on the date of my removal proceedings. I would like to reopen this and do it all again. At which point, all of the rights and remedies that are detailed in the original notice to appear, and I would direct the court's attention to the second page of that notice, which really is replete with a very lengthy recitation of the defendant's rights that kick in in that situation. It details that the person has a right to retain a lawyer. It states that a list of free legal services will be provided. And that is certainly the case here where Mr. Rangel was given a list of free legal services, I think on two different occasions. The NTA indicates that it happened when the NTA was issued. And then separately, there is an agent's note, an immigration agent's note, that after Rangel reentered the country, he was provided again with a list of free legal services. And I'm going to turn back to that note in a moment. But finishing up with the NTA, it also says that the defendant can examine evidence provided by the government, can object to evidence, can cross-examine witnesses. It's effectively a lengthy list of what you can do during your immigration hearing. It also does state in the NTA that in absentia, removal proceedings may take place under certain circumstances. So it's really quite a fulsome recitation of a person's rights. And so it would be very difficult to imagine a situation, though, where that kind of document could completely and fully list every permutation of any case and every right or remedy that may become available depending on which twists and turns a case may take. And so in this case, when someone does not appear for their removal hearing, it makes sense why something like that might not be contained in the NTA. But again, the solution is an incredibly broad remedy, a chance to do it all over again simply by making out the argument that I was not informed of my hearing and I could not attend. I think it is also worth noting in this case that Rangel did in fact have notice of his right to reopen. There's an agent's note in his A file which states that the defendant was taken into ICE custody, I believe on September 5th, after his release from that drunk driving conviction that prevented him from attending the removal hearing. And it states that the subject has accepted the IJ order for removal. And then again, it also adds that he was served with that list of free legal aid resources. Was that disputed in the district court? I think the fact of it was not disputed. The argument was that it was inconclusive or insufficient, but it is the only piece of evidence in the record as to this, and there is nothing to the contrary that has been offered. No affidavit contesting it or statement? There was no affidavit from the defendant on that point, Your Honor. And then turning to this notice question, one of the things that was mentioned by my colleague a few moments ago is that in the Aretha Campos case, there was some notice about this right. I would add though that in that case, the Aretha Campos court pointed out that the defendant was 14 years old when the initial removal proceedings began, and at that point as a young teenager, he was acknowledging that no one's paying much attention to anything if you're 14. And instead what the court focused on was the passage of time, the 10 plus years that had happened since then, and saying it was within that window of time that he could have learned about his rights and taken advantage of the right to reopen. That applied there, and that equally applied here. And then I'd also like to turn back to the Charles Well case, which again I think has taken us down a road that's somewhat far afield from where we began in this litigation. Again, the Charles Well case does not deal with a defendant who was removed in absentia. And in fact, I don't believe any of the cases that the defense has cited deal with in absentia proceedings. They most typically deal with waivers of the right to appeal, which like in the criminal context, is statutorily required. There's an obligation to inform someone of their right to appeal. In this case, it's not disputed that that notice was given. It is in the NTA. For all the reasons that I've already stated, the government's view is that that language is neither misleading nor ambiguous. I'd also add that here, the defendant in this case has not argued that he was misled in any way. In fact, the record is fairly consistent that when presented with opportunities to pursue his case further in the immigration proceedings, he affirmatively declined to take advantage of those opportunities. He did secure bail. However, he was asked by the immigration officer, it appears he was asked, or at least it was discussed with him, the right to reopen. And the record reflects that he declined to do so. Would it be a subjective inquiry as to whether or not he was misled as opposed to an objective one, just looking at the face of the document? And what's your basis for that? It would have to be a factual issue. Right now, this was, again, not presented to the district court, and there's no evidence that that took place. So I think at a minimum, it's not right for consideration here, and that there would have to be some kind of dispute as to whether that took place in order to move forward on that argument. And so, again, the defendant apparently declined to move to reopen his case after being presented with that information. And then separately, when he was later found in the country again, and there was a motion to reinstate his removal proceeding, the options there are you may make a statement contesting this decision to an immigration officer, and then the same document contains an acknowledgment section for the defendant where he or she can select I do want to make such a statement or I do not want to make such a statement. Here, Rangel selected the do not box and then signed that and moved along with the process. So when opportunities were afforded to him, he declined those. And separately, there was no indication here that he was actually confused, misled, or deprived of any opportunity that he wished to pursue. Thank you, Ms. Wells. Thank you. We'll now hear on rebuttal from Ms. Penabad. Thank you, Your Honor. I've got a number of points that I'd like to address quickly. The government argues that there was a broad window of time for the motion to reopen, but that's actually not the case. So Mr. Rangel Rodriguez was out of IDOC custody and into immigration custody, which is the earliest that the record supports he would know of the removal order. And he was removed on September 24th. So September 5th to September 24th. And then the order, the removal order was reinstated on September 26th. And so reinstatement is the time that deprives, the instance that deprives him of the opportunity to seek administrative remedy, and that's a very, very small window, particularly for somebody who did not have notice of this remedy where it was omitted from the NTA. The government cited to the agent's notes, and we did contest that in the district court as an insufficient basis to determine that there was any accurate, adequate notice. First of all, the note simply says Mr. Rangel declined, has no information about what sort of advice of rights the agent may or may not have given. But there wasn't any affirmative evidence put in on the other side by the defendant saying, disputing it. No, there was no... As a factual matter. Yes, Your Honor. I believe that we did indicate that the agent's notice should not be relied on, and also to the extent that the government is arguing it's some sort of waiver, that would have to be knowing and voluntary, and I don't think that we have a sufficient basis here to conclude that. With regard to the argument that Charles Well was not raised, we've consistently argued that the notice was inadequate, both below Record 8 at 4 through 25, and our reply at 11 at 9. In our opening brief, we made that argument at 25 through 26, and regarding the misleading language at pages 19 through 28. And with regard to the question about an affirmative declination in the notice of intent to reinstate, I would point to two responses. First, this is the same exact language that was in dispute in the Charles Well case, where the Charles Well court found that the affirmative omission plus the misleading language resulted in a misleading notice to the individual. And because it's misleading, I don't think that it should be relied upon. And second, the question at the time of a reinstatement order is limited. It is, is there a removal order? Not a valid removal order. There's no inquiry into the underlying proceedings. Simply, is there a removal order? Is the individual the same as the individual identified in the removal order, and has there been an unlawful reentry? So there's not the opportunity there to collaterally attack an underlying removal order. If Mr. Rangel Rodriguez had made a statement at that point, he did not have the opportunity to go back to ask the court, or ask the agent essentially, to review the procedural defects in his underlying removal order. And so for these reasons, we'd ask the court to vacate the district court's opinion for further proceedings. Thank you, Ms. Penabad. Thank you, Ms. Wells. The case will be taken under That will complete the hearings for the morning. Thank you. Thank you.